(C. D. 1860)

TROPICAL CRAFT CORP. *v.* UNITED STATES

United States Customs Court, First Division

(Decided March 21, 1957)

*Jordan & Klingaman* (*Edward F. Jordan* of counsel) for the plaintiff.
*George Cochran Doub*, Assistant Attorney General (*Richard E. FitzGibbon*, trial attorney), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges; MOLLISON, J., dissenting

WILSON, Judge: It is conceded that this is a retrial of the issues presented to and passed upon by this court and the appellate court in *United States* v. *Tropical Craft Corp., Successors to Tropical Craft Import & Export Corp.*, 42 C. C. P. A. (Customs) 223, C. A. D. 598, decided June 15, 1955, and that the merchandise in the instant case, described on the invoice as "Alpargatas Footwear," is the same in all material respects as that in the previous case, *supra*. It might well

have been stipulated that the merchandise now under consideration consists of the identical footwear before the court in the *Tropical Craft Corp.* case, *supra,* since plaintiff's exhibits 1 through 4 in the incorporated case are the exhibits now before us representing the importation. The record in the previous *Tropical Craft Corp.* case, *supra,* was incorporated herein without objection.

The merchandise here involved was classified under paragraph 1530 (e) of the Tariff Act of 1930 and assessed with duty at 35 per centum ad valorem. The claim is for classification under the same paragraph, as modified by the trade agreement with Argentina, T. D. 50504, which provides for duty at 17½ per centum ad valorem against a special type of "Footwear known as alpargatas," provided the uppers of the specified footwear are "composed wholly or in chief value of cotton or other vegetable fiber" and the soles are "composed wholly or in chief value of vegetable fiber other than cotton."

Paragraph 1530 (e) of the Tariff Act of 1930, insofar as applicable here, reads as follows:

* * * boots, shoes, or other footwear * * * the uppers of which are composed wholly or in chief value of wool, cotton, ramie, animal hair, fiber, rayon or other synthetic textile, silk, or substitutes for any of the foregoing, whether or not the soles are composed of leather, wood, or other materials, 35 per centum ad valorem.

The same paragraph, as modified by the trade agreement with Argentina, T. D. 50504, makes one specific exception in favor of a certain type of footwear as follows:

Footwear known as alpargatas, the uppers of which are composed wholly or in chief value of cotton or other vegetable fiber, and with soles composed wholly or in chief value of vegetable fiber other than cotton.

At the retrial of the issues, the plaintiff called four witnesses: Al Lewis, a designer of sample shoes; Albert Freedman "in charge of all the shoe buying in Gimbel's"; Samuel Rappaport, a man experienced in the manufacture and sale of shoes, and particularly familiar with the manufacturing of heels for shoes; and Michael M. Leder, sales manager of Caribbean Modes, Inc., Miami, Fla., "a shoe manufacturing concern." From each of these witnesses, counsel for plaintiff was permitted to elicit an answer to the question of what constitutes a sandal as a type of footwear. The following testimony, given by the witness Lewis, fairly summarizes the evidence as to what constitutes sandals:

Q. Mr. Lewis, what are the identifying characteristics of footwear known as sandals?

 *       *       *       *       *       *       *

A. Well, in my opinion, a sandal is an open shoe, with an open back, and open toe, held together principally by a buckle or a similar adjustment.

Q. You mean held to the foot?—A. Yes, constructed so as to fit.

\*     \*     \*     \*     \*     \*     \*

Q. Does the material of which the article is made make any difference as to whether it is or is not a sandal?—A. I don't believe so.

Q. Now based on your experience, Mr. Lewis, do sandals have heels.

\*     \*     \*     \*     \*     \*     \*

A. I never saw a sandal without a heel.

Q. Do sandals have more than one type of heel?

\*     \*     \*     \*     \*     \*     \*

A. Yes, various types of heels.

Q. Will you name them?—A. This, for instance, is one type.

Q. When you say "this", you mean Plaintiff's Exhibit #2 in the incorporated case?—A. Yes, Exhibit #2, this is a wedge heel, there are Cuban heels, Louis heels, flat heels.

Q. What is a Louis heel?—A. A leathershaped heel from two inches to three inches, it is the shape of the heel.

Q. And Plaintiff's Exhibit #2 has a wedge heel?—A. Yes, this—Plaintiff's Exhibit #2—is a wedge heel, wedge leather heel.

Q. Heels like on men's shoes?—A. No, on women's shoes, spectator type of shoe, built up leather heels anywhere from one-fourth of an inch to two and a half to three inches.

Q. Is the heel an essential part of the footwear known as sandals?

\*     \*     \*     \*     \*     \*     \*

A. Definitely. (R. 6–9.)

None of the witnesses showed any familiarity with the type of footwear known as alpargatas, although one witness, Mr. Rappaport, stated that he had heard of alpargatas. Concerning that type of footwear, he testified on cross-examination as follows:

X Q. Did you ever manufacture alpargatas?—A. No, sir.

X Q. Do you know what alpargatas are?—A. In a general way, yes.

X Q. Have you handled shoes similar to Plaintiff's Exhibits #1 through #4 in the incorporated case?—A. Yes, sir. (R. 36–37.)

He was not shown collective illustrative exhibit 6 in the incorporated case, admitted to be alpargatas, nor was he asked to define the term "alpargatas." The witnesses Lewis and Leder were not asked concerning such merchandise, while Mr. Freedman candidly answered that he did not know what an alpargata is (R. 31). The testimony offered, therefore, to supplement the record in the incorporated case, in substance, was to the effect that most sandals have heels; that the material out of which the footwear is made makes no difference as to whether the type of merchandise under consideration is or is not a sandal; that the distinguishing characteristics of a sandal are an "open shank generally and an open heel and sometimes a closed toe, but mostly an open toe"; that they have a strap "which goes around the ankle and fastens either with a belt or buckle or tie or some such"

(R. 25). There is nothing in the supplementary record to indicate whether the merchandise in question (plaintiff's exhibits 1 through 4) does or does not consist of alpargatas.

The theory upon which plaintiff proceeded in the retrial is set forth in the following statement placed in the record by counsel for plaintiff:

> In other words, the Court held that our merchandise was not alpargatas because it was not a sandal, and it was not a sandal because it did not have a heel. We are getting right down to the heel. Now if a sandal has a heel then that brings our merchandise within the sandal phase of the case and this is of course testimony as to the common meaning and is purely advisory, but as in the previous case there was testimony as to the common meaning of alpargata and also that they were a sandal-like type of shoe. (R. 11.)

In its brief, counsel for the plaintiff stated that the two questions for decision are—

> 1— Are the involved articles of footwear "sandals" within the meaning of that term as commonly understood?
>
> 2— If so, are they the type of sandals known as "alpargatas" as that term is commonly understood?
>
> No question of commercial designation is involved.

We are unable to see wherein any different questions are now presented than were before the court in the incorporated case, *supra*. In that case, the appellate court stated the issues as follows:

> The issue before us on appeal is whether the imported footwear is dutiable at 35 per centum ad valorem under paragraph 1530 (e), *supra*, as contended by the Government, or whether the imported footwear consists of alpargatas and is therefore dutiable at 17½ per centum ad valorem under paragraph 1530 (e) as modified by the Trade Agreement with Argentina, *supra*, as found by the Customs Court.

The appellate court then cited the following definitions of alpargatas and sandals:

*Funk & Wagnalls New Standard Dictionary*—1931, 1939, 1942, 1945 Editions:

*Alpargata,* n. (Sp.)—A sandal-like shoe having a sole of plaited hemp or rush, worn by the Chinese, and by the Spanish peasants and Filipinos.

*Webster's New International Dictionary,* 1934, 1936, 1941, 1948, 1951 Editions:

*Alpargata,* n. (Sp.)—A kind of sandal usually made of hemp.

*Sloane's Neuman and Baretti's Spanish Pronouncing Dictionary*—By Velazquez D. (Appleton & Co. 1899)

*Alpargata*—A sort of shoes or sandals made of hemp.

*Diccionario Ingles-Espanol y Espanol-Ingles Gernier Hermanos,* Paris Editors

*Alpargata*—A sort of shoes or sandals made of hemp.

*Funk & Wagnalls New Standard Dictionary*—1931, 1939, 1942, 1945 Editions:

*Sandal,* n. 1. A kind of shoe, consisting usually of a sole only but sometimes with a shield for the heel and a cap for the toes held to the foot by thongs, cords, etc. 2. A light fancy slipper often embroidered.

*Webster's New International Dictionary*—1936, 1941, 1948, 1951 Editions:

*Sandal,* n. 1.  A kind of shoe consisting of a sole strapped to the foot; a protection for the foot, covering its lower surface only.  2.  A fancy slipper sometimes containing open work in the vamps and quarters.

Referring to the foregoing definitions, the appellate court then stated, pages 226–227, as follows:

Relative to the above definitions, the Government in essence contends that a sandal is of light weight and with a flat sole, and that since the imported footwear has a wedge heel it does not come within the common understanding of the term sandal and therefore cannot be classified as alpargatas.

The appellee, on the other hand, was successful in convincing the Customs Court that the imported footwear came under the above cited definitions. * * *

\*    \*    \*    \*    \*    \*    \*

We are of the opinion that the decision of the Customs Court cannot be sustained.

We have reviewed the record of this case, and have found that the evidence which was submitted on behalf of the importer was for the most part in the nature of oral testimony.  The witnesses in essence stated that the chief characteristic of an alpargata is a rope sole, but that the upper can consist of almost any material.  There was also testimony given to the effect that the wooden wedge does not destroy the identity of an alpargata.  Neither party contended that the term alpargatas has a commercial meaning which differs from the common meaning.  Thus there is no question of commercial designation and the words must be construed according to their common meaning.  *Ringk & Co.* v. *United States,* 10 Ct. Cust. Appls. 107.

The appellate court then cited authorities in support of the proposition that the Court of Customs and Patent Appeals may review questions of fact, and, in determining the common meaning of terms, may receive or reject evidence as to such meaning "and may, as an aid, consult the dictionaries, lexicons, and written authorities as to such common meaning." The following holding by the court, at page 227, is then set forth:

Under the authority of the above-cited cases, we feel that the testimony, which was submitted relative to the meaning of the term alpargata, should have been rejected by the Customs Court since it appears contrary to the definitions given in the cited authoritative sources.  The dictionaries define an alpargata as being a "sandal-like shoe" and a "kind of sandal."  The term "sandal" is in turn defined as "a kind of shoe consisting usually of a sole only but sometimes with a shield for the heel and a cap for the toes * * *" and "a kind of shoe consisting of a sole strapped to the foot * * *."  These sources do not specify that a sandal has a heel.  A review of the record discloses that appellee, who had the burden below of proving that the Customs Collector was in error, cited no authoritative written sources which showed that a sandal could have a "wedge" heel.  Our own research to additional authoritative sources has failed to disclose a definition of a sandal which includes a wedge heel.  It would seem improper to read a wedge heel into the above definitions of sandals since these definitions made no mention of it, but, on the contrary, specify that sandals consist of a "sole only" or "a sole strapped to the foot."  Furthermore, since the definitions of "sandals" specify certain features which are exceptions to the general meaning, but are within the definition of a sandal, e. g. "a shield for the heel and a cap for the toes" etc., it

would certainly seem that they would also specify the presence of a heel if this feature were considered as being within the definition.

We are therefore of the opinion that since an alpargata is defined as a "kind of sandal" and a "sandal-like shoe," and since the imported merchandise does not fall within the above-cited definitions of sandals because of the presence of a wooden wedge heel, that the imported footwear cannot be considered alpargatas. * * * It is our opinion that the trade agreement does not provide for modified basic alpargatas, but for footwear which has no heel but which does have the other characteristics of alpargatas enumerated in the trade agreement.

\* \* \* \* \* \* \*

We cannot escape the conclusion that the decision in the incorporated case is controlling in the instant case.

It should also be pointed out that collective illustrative exhibit 6 in the incorporated case consists of a type of footwear known as alpargatas. All seven items in this exhibit have flat soles with no heels whatever. Each item in the exhibit also has a sole, composed of vegetable fiber, other than cotton, and each has an upper, composed wholly or in chief value of cotton or other vegetable fiber. Each item of the imported merchandise, represented by plaintiff's exhibits 1 to 4, has a wedge heel, which raises the back portion of the inside sole of the footwear approximately 2 inches above the bottom of the flat outer sole.

Aside from the incorporated case, we are clearly of the opinion that the plaintiff in this retrial has failed to meet the burden of establishing the incorrectness of the collector's classification and has fallen far short of establishing the correctness of its own claim. That this dual burden must be met by the plaintiff satisfactorily is a long and established principle of customs law which requires no citation of authorities.

We are, therefore, of the opinion, for the reasons hereinbefore set forth, and hold that the merchandise in this case is properly dutiable under paragraph 1530 (e) of the Tariff Act of 1930 at the rate of 35 per centum ad valorem under the provisions therein for "boots, shoes, or other footwear * * * the uppers of which are composed wholly or in chief value of wool, cotton, ramie, animal hair, fiber, rayon or other synthetic textile, silk, or substitutes for any of the foregoing, whether or not the soles are composed of leather, wood, or other materials," as classified. The protest must, accordingly, be overruled. Let judgment be entered accordingly.

### DISSENTING OPINION

MOLLISON, Judge: I regret that I must dissent from the conclusion reached by my colleagues in this case. On this retrial of the issue, the plaintiff has supplied evidence as to the common meaning of the term "sandal," to which the term "alpargata" is tied, which, to my mind, should enable the court to reach the conclusion of law that the

terms "sandal" and "alpargata" include footwear with heels and do not necessarily refer to footwear having a sole only.

The evidence offered was of a type which is fully admissible as an aid to the court in the determination of the common meaning of tariff terms. *United States* v. *Ben Felsenthal & Co. et al.*, 16 Ct. Cust. Appls. 15, T. D. 42713. Our appellate court noted that the lexicographic definitions upon which it relied did not specify that a sandal has a heel; neither do they uniformly specify that it has not a heel. The evidence, therefore, was directed to a point on which the lexicographic authorities consulted by the court were either silent, or not clear, or inconclusive. In my view, therefore, it should have been accorded weight in the determination of the matter.

I would sustain the protest claim upon the record made herein.